**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

DANA BILLINGS, Next friend for          :
Darius Vinson and Maria Damons          :
a/k/a Dana Vinson ,                     :
                                        :
          Plaintiff,                    :     CIVIL ACTION NO.
                                        :     2:10-CV-00064-RWS
          v.                            :
                                        :
WINDER POLICE                           :
DEPARTMENT AND                          :
CITY OF WINDER,                         :
                                        :
          Defendants.                   :

**<u>ORDER</u>**

This case is before the Court for consideration of Defendants' Motion for

Summary Judgment [15].  No response has been filed to the Motion, and it is

thus deemed unopposed.

**Factual Background**[1]

Plaintiff Dana Billings, now know as Dana Cureton ("Cureton"), is the

owner of the residence located at 194 Pine Rock Road in Winder, Georgia.

---

[1]  The Factual Background is taken from Defendant's Statement of Undisputed
Facts [15-9] which are deemed admitted because Plaintiffs have failed to file a
response thereto.

Darius Vinson ("Vinson") is Cureton's son.  At the time in question, Vinson was nearly 16 years old and was between 5 feet, 8 inches and 5 feet, 10 inches tall and weighed over 200 pounds.  Maria Damons ("Damons") is the mother of Cureton.

On April 13, 2009, Quincy Smith ("Smith") was involved in an altercation and shooting in the parking lot of a Waffle House restaurant in the City of Winder during which Smith shot Robert Arnold with a handgun and discharged the handgun at an occupied vehicle.  As a result of that incident, Officer Missy Towe ("Officer Towe") of the Winder Police Department swore out a series of arrest warrants for Smith.  Smith was a friend of Vinson's family.

On the afternoon of April 16, 2009, having been informed that Smith had been living at 160 Pine Rock Road in the city of Winder, Officer Towe requested the assistance of Winder Police Department Detectives Chris Stapleton ("Detective Stapleton") and Eric Vance ("Detective Vance") in locating and arresting Smith.  She also requested the assistance of a number of deputies from the Barrow County Sheriff's Office.  The deputies and police officers went to 160 Pine Rock Road, arriving at 2:03 p.m.  The officers

determined that no one was within the residence at 160 Pine Rock Road and were about to leave the scene when a female advised them that Smith had been staying at 194 Pine Rock Road. The deputies and officers proceeded to 194 Pine Rock Road. When they arrived at that address at approximately 2:24 p.m., several of the officers stationed themselves outside the residence while Detective Stapleton went to the front door, knocked, and announced "police officer." Detective Stapleton had his service weapon drawn pointing toward the ground by his left leg. After a few moments, Detective Stapleton observed a black male coming down the stairs inside the building. The male was Vinson. Detective Stapleton could see nothing in Vinson's hands and immediately holstered his weapon.

As Vinson opened the front door of the residence, several deputies shouted for him to show his hands. Vinson opened the front door and Detective Stapleton advised him that they had a warrant for Smith. He asked Vinson if he knew Smith and if he knew where Smith was. Vinson acknowledged that he knew Smith but stated that Smith was not at the residence. Vinson was asked if the deputies could check the house for Smith. In his deposition, Vinson testified that he responded as follows: "I said, sure, but he's not in here, I don't care, you can search the house." At that point, one or more deputies entered the

house to check for Smith.  The officers were wearing bullet proof vests, black boots, and navy pants.

Detective Stapleton asked Vinson if he could pat down his pants pockets, and Vinson replied, "ok."  Detective Stapleton did a pat down of Vinson's pants pockets and found nothing.

Detective Stapleton and Vinson then came off the front porch into the front yard.  Officer Towe approached Vinson and told him they had a warrant for Smith and information that Smith had recently been at this residence. Vinson told Officer Towe that he knew Smith but that he had not seen him for a couple of days.

Vinson was outside the residence about five (5) minutes.  When his conversation with Officer Towe was finished, Vinson went back inside the house unaccompanied by any officer.  He was then in the house by himself. Vinson went upstairs in the house and took a picture of the law enforcement vehicle with his cell phone and sent a text message to his mother, Cureton, informing her that the police had come to the house looking for Smith.

Within a short period of time, Vinson's grandmother, Damons, returned to the home.  When Damons arrived at the residence, all of the deputies had already come out of the house.  At 2:29 p.m.,  Cureton call Vinson on his cell

phone and asked him what was wrong.  Vinson told his mother that his

grandmother was outside and at 2:31 p.m. Cureton called her mother.  Damons

talked with Officer Towe and Detective Stapleton and acknowledged knowing

Smith.  She stated that Smith lived up the street from her and that she had

spoken with him within the last couple of days.

Officer Towe, Detective Stapleton, and Detective Vance left the

residence at 2:44 p.m.   No officers threatened physical harm to Vinson or

harmed Vinson.  Handcuffs were never placed on Vinson, and he was not

threatened with arrest.  Vinson was not pushed or shoved.  No officers put their

hands in Vinson's pants pockets.  Vinson has not needed any type of

professional assistance as a result of the encounter and is not suffering from

depression or anxiety.

### Discussion

Federal Rule of Civil Procedure 56 requires that summary

judgment be granted "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears

'the initial responsibility of informing the . . . court of the basis for its motion,

and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.'"

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986) (internal quotations omitted)).  Where the moving party makes

such a showing, the burden shifts to the non-movant, who must go beyond the

pleadings and present affirmative evidence to show that a genuine issue of

material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257,

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

6

reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

Plaintiffs have named both the City of Winder and the Winder Police Department as Defendants in this action.  The Winder Police Department is not a legal entity and is not a proper party to this action.  DeLoach v. Marietta Police Dept., No. 1:09-CV-650-RWS, 2009 W.L. 2486324 at *2 (N.D. Ga. Aug. 12, 2009).  Therefore, the Marietta Police Department is due to be dismissed from this action.

The only remaining Defendant in the case is the City of Winder.  In Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) the Supreme Court held that municipalities are not liable under the doctrine of *respondeat superior* for

acts of their officials.  "Instead, municipalities may only be held liable for the execution of a governmental policy or custom."  Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997).  Plaintiffs have submitted no evidence that would support a finding that the City of Winder had any policy or custom that authorized the violation of Fourth Amendment rights of persons. Moreover, the evidence before the Court makes it clear that no Fourth Amendment violation occurred.  The officers were granted permission to enter the residence by Vinson.  "One of the well-established exceptions to the probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent." U.S. v. Garcia, 890 F.2d 355, 360 (11 Cir. 1989).  Based on the evidence before the Court, Vinson voluntarily consented to the search.  Vinson also voluntarily consented to a pat down of his pants pockets.

　　　　Plaintiffs also allege state law claims of false arrest, false imprisonment, illegal search, and invasion of privacy.  Based on the facts presently before the Court, Plaintiffs have failed to offer evidence that would support any of these state causes of action.

AO 72A
(Rev.8/82)

## Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment [15] is hereby **GRANTED**.

**SO ORDERED**, this  25th  day of February, 2011.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)